# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | SITTING JUDGE IF OTHER THAN ASSIGNED JUDGE | |
|---|---|---|---|
| CASE NUMBER | 01 C 6699 | DATE | OCT. 31, 2002 |
| CASE TITLE | PAUL R. STEADMAN v. CHRISTINE TODD WHITMAN, etc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ___ __.

(3) ☐ Answer brief to motion due ___ . Reply to answer brief due __ ___.

(4) ☐ Ruling/Hearing on __ ___ set for ___ __ at ___ .

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ___ __ set for _ ___ at ___.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ___ __ set for _ ___ at ___.

(7) ☐ Trial[set for/re-set for] on ___ __ at _ ___.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _ ___ at __ ___.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motions [23-1] [29-1] are denied without prejudice. Plaintiff's motions [26-1] [33-1] are denied without prejudice. Defendant's motion for summary judgment [23-2] is granted. The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiff dismissing plaintiff's cause of action with prejudice. If plaintiff wishes to appeal this order, he must file a Notice of Appeal to the United States Court of Appeals for the Seventh Circuit with the Clerk of the Court, United States District Court for the Northern District of Illinois, 219 South Dearborn Street, 20th Floor, Chicago, Illinois 60604, within sixty (60) days of the entry of the judgment in this case.

(11) ■ [FOR FURTHER DETAIL, SEE ATTACHED MEMORANDUM OPINION AND ORDER].

| | No notices required, advised in open court. | | 2 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | NOV 01 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 34 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 10/31/2002 date mailed notice | |
| cw | courtroom deputy's initials | Date/time received in central Clerk's Office | mgm/cw mailing initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAUL R. STEADMAN, )
 )
             Plaintiff, )
 )
         v. ) No. 01 C 6699
 )
CHRISTINE TODD WHITMAN, )
Administrator, United States )
Environmental Protection )
Agency, ) NOV 0 1 2002
 )
             Defendant. )

## **MEMORANDUM OPINION AND ORDER**

Pro se plaintiff Paul Steadman is a former employee of the United States Environmental Protection Agency ("EPA"). Defendant in this case is the Administrator of the EPA. Effective May 5, 2000, plaintiff was discharged from the EPA. Plaintiff alleges he was discriminated against because of his age, color, and race (African-American) and in retaliation for having filed prior discrimination lawsuits. Plaintiff further alleges that this discrimination resulted in the termination of his employment with the EPA; the denial of promotions; and the failure to fairly and timely process his complaints of discrimination. The complaint states that the discrimination

34

occurred February 7, 2000 and thereafter and plaintiff expressly states in a brief that he is not presently pursuing any claims based on earlier events that were raised in the prior lawsuits and prior administrative complaints.  Defendant moves for summary judgment on the ground that plaintiff failed to timely and properly exhaust administrative remedies.[1]  Alternatively, defendant "cross" moves for summary judgment on the ground that plaintiff cannot prove any of his claims of discrimination.  Plaintiff has also moved for summary judgment.[2]  In accordance with Local Rule 56.2, defendant advised pro se plaintiff as to how to respond to a summary judgment motion.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant.  Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002); Hilt-Dyson v. City Of Chicago, 282 F.3d 456, 462 (7th Cir.), cert. denied, 123 S. Ct. ___ (Oct. 7, 2002); Schneiker v. Fortis Insurance Co., 200 F.3d 1055, 1057 (7th Cir. 2000).  The burden of establishing a lack of any genuine issue of

---

[1] Defendant labeled this motion as one to dismiss or for summary judgment.  Since defendant's contentions require the consideration of documents beyond the complaint, it will be considered as a motion for summary judgment and the motion to dismiss will be denied without prejudice.

[2] Plaintiff has also mislabeled one of his briefs [Docket Entry 33] as a motion.  As a formality, the motion will be denied without prejudice, but the arguments contained therein have been considered.

material fact rests on the movant. Outlaw v. Newkirk, 259 F.3d 833, 837 (7th Cir. 2001); Wollin v. Gondert, 192 F.3d 616, 621-22 (7th Cir. 1999). The nonmovant, however, must make a showing sufficient to establish any essential element for which he or she will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Billings v. Madison Metropolitan School District, 259 F.3d 807, 812 (7th Cir. 2001). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. Celotex, 477 U.S. at 324. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. See NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 236 (7th Cir.), cert. denied, 515 U.S. 1104 (1995); Covalt v. Carey Canada, Inc., 950 F.2d 481, 485 (7th Cir. 1991); Collins v. Associated Pathologists, Ltd., 844 F.2d 473, 476-77 (7th Cir.), cert. denied, 488 U.S. 852 (1988). As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Logan v. Commercial Union Ins. Co., 96 F.3d 971, 978 (7th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325, 106 S. Ct. 2548. Once the moving party satisfies this burden, the

> nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue must be 'material.'" Logan, 96 F.3d at 978. "Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute." Id. (citation omitted). In determining whether the nonmovant has identified a "material" issue of fact for trial, we are guided by the applicable substantive law; "[o]nly disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." McGinn v. Burlington Northern R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996) (citation omitted). Furthermore, a factual dispute is "genuine" for summary judgment purposes only when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Hence, a "metaphysical doubt" regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and "the nonmovant fails to demonstrate a genuine issue for trial 'where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . .'" Logan, 96 F.3d at 978 (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

Outlaw, 259 F.3d at 837.

Defendant's motion based on exhaustion and timeliness will be considered first. Resolving all genuine factual disputes and drawing all reasonable inferences in plaintiff's favor, the facts assumed to be true for purposes of this motion are as follows. Plaintiff was employed by the EPA from December 1989 until May 5, 2000. His last position was as an Environmental Scientist/On-Scene Coordinator. The stated grounds for

plaintiff's termination were that, on November 18, 1999 and January 20, 2000, he engaged in the misconduct of (a) being absent without leave, (b) falsifying time and attendance sheets, and (c) misrepresenting material facts about his whereabouts.

The American Federation of Government Employees ("AFGE") represents certain EPA employees, including employees in plaintiff's former position. On June 19, 2000, on plaintiff's behalf, AFGE representatives submitted to Deputy Regional Administrator David Ullrich a written informal grievance. Def. Exh. 1; Def. Exh. 2 at 1. In addition to challenging the grounds of plaintiff's termination, it was alleged that plaintiff was of Black (African-American) race and that he was over 40 years of age. Def. Exh. 1 ¶ 2. It was also alleged that plaintiff "has been subjected to disparate treatment, racial discrimination, reprisal, harassment, and retaliation." Id. ¶ 4. The Human Resources office treated the grievance as a formal Step 1 grievance under the applicable collective bargaining agreement and requested additional time to respond. On plaintiff's behalf, the Union agreed to that procedure.

Plaintiff contends the application of the grievance procedure was "contrived by the agency and its union." Pl. Rule 56.1 response[3] ¶ 4. Plaintiff states that he:

---

[3]Plaintiff's Rule 56.1 Response is attached to Plaintiff's Memorandum Supporting Motion in Opposition to Agency's Motion to Dismiss or for Summary Judgment [Docket Entry 31] and is entitled: "Plaintiff's Response to Federal Defendant's Rule 56.1(A)(3) Statement of Material Facts and

>       requested and understood that the proposed
>       termination and any subsequent action as a result
>       of that "proposal" including his removal would be
>       handled and resolved through the equal employment
>       opportunity regulatory process per a telephone
>       conversation initiated by and with the Region V
>       EEO Manager Mr. Robert Thayer and the Region V
>       Director of Civil Rights Mr. Levester Spearman on
>       February 8, 2000; such communication regarding
>       Plaintiff's desire and intent "to go the EEO
>       route" was fully communicated to AFGE union reps
>       who insisted that I needed "someone to represent
>       you now, because they have all kinds of bad
>       things planned for you!"

Id.[4]

This statement supports that plaintiff initially requested EEO procedures instead of a grievance.[5] While plaintiff states that he also instructed his union representatives to pursue that route, he does not state that he rejected their insistent advice to follow the grievance route and

---

Motion in Opposition to Agency's Motion to Dismiss or for Summary Judgment."

[4] Plaintiffs' Rule 56.1 response contains much argument and statements that could not be based on personal knowledge. At the end of the response, plaintiff states: "Plaintiff so sweareth to the above." Although not artfully drawn, the Rule 56.1 response will be treated as an affidavit to the extent it contains statements that clearly appear to be based on plaintiff's personal knowledge. Cf. Williams v. Hager Hinge Co., 916 F. Supp. 1163, 1168-69 (M.D. Ala. 1995). Additionally, defendant was provided an opportunity to file a reply in support of her summary judgment motion and did not. Since there is no objection to its form, pro se plaintiff's "affidavit" may be considered even if the affidavit does not fully comply with Fed. R. Civ. P. 56(e). See Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure: Civil 3d § 2738 at 372-77 (1998).

[5] As is set forth below, EPA employees are not permitted to pursue both routes; they must choose one or the other.

there is no evidence that plaintiff raised any objection during any of the grievance hearings. But even if the AFGE representatives acted contrary to plaintiff's instructions, there is no evidence that they were not his duly authorized representatives. To the extent the AFGE violated its duty of fair representation by failing to provide proper representation, plaintiff would have to bring such a claim before the Federal Labor Relations Authority. He may not raise a violation of the duty of fair representation in a suit against the EPA in a federal district court. See 5 U.S.C. § 7118; Karahalios v. National Federation of Federal Employees, Local 1263, 489 U.S. 527, 531-32 (1989); Rizzitelli v. Federal Labor Relations Authority, 212 F.3d 710, 712 & n.1 (2d Cir. 2000); Abbott v. United States, 144 F.3d 1, 4, 6 n.4 (1st Cir. 1998); Boutte v. Service Employees International Union, Local 73, AFL-CIO, 2001 WL 929758 *2 (N.D. Ill. Aug. 15, 2001), aff'd by unpublished order, 31 Fed. Appx. 336, 2002 WL 453705 (7th Cir. March 21, 2002). In the present lawsuit, the actions that AFGE representatives took must be accepted as the actions of plaintiff.

Ullrich denied the Step 1 grievance and the Union thereafter filed a Step 2 grievance on plaintiff's behalf. On September 25, 2000, a Step 2 hearing was held before EPA Regional Administrator Francis Lyons at which plaintiff and his Union representatives were present. In a final decision dated September 27, 2000, the Step 2 grievance was denied and plaintiff's discharge upheld. This included rejecting

plaintiff's contention that his discharge was because of "disparate treatment." Def. Exh. 4 at 3-4. The final decision refers to possible appeal rights, id. at 4,[6] but there is no evidence that plaintiff appealed the Step 2 final decision.

On February 13, 2001, plaintiff met with EEO counselors Robbie Armstead and/or Audrie Washington. Plaintiff contends this was not his initiation of an informal complaint, but a continuation of the process he initiated through his February 8, 2000 telephone conversations with Thayer and Spearman.

> [The 2001 procedures] were considered as a
> follow-up to Plaintiff's initial telephonic
> consultation with Mssrs. Thayer and Spearman on
> February 8, 2000 wherein Plaintiff was advised
> that the informal resolution process <u>may take
> longer than the statutes allow</u>, and the
> Plaintiff's verbal agreement was needed to
> authorize taking whatever time would be
> necessary; note, too, that during this interim:
> 1) the Complainant did not have access to an
> attorney to provide crucial legal advice; 2) he
> was unable to have further contact with these EEO
> people because of the agency's imposed and
> threatening "access restriction" on Plaintiff;
> 3) he was told by EPA's union officials that the
> Agency had drafted a "Settlement Agreement" which

---

[6] See 5 C.F.R. § 1201.154(d) (appeal to Merit Service Protection Board); 29 C.F.R. § 1614.401(d) (appeal to EEOC). Because plaintiff's grievance raised issues in addition to the discrimination claims, it would have been a "mixed" claim appealable to the Merit Services Protection Board ("MSPB"). See 5 U.S.C. § 7121(d); Johnson v. Peterson, 996 F.2d 397, 400-01 (D.C. Cir. 1993); American Federation of Government Employees, Local 2052 v. Reno, 992 F.2d 331, 334-35 (D.C. Cir. 1993); Gustave-Schmidt v. Chao, ___ F. Supp. 2d ___, 2002 WL 31251323 *6 (D.D.C. Sept. 30, 2002); Hupka v. United States Department of Defense, 134 F. Supp. 2d 871, 877 (E.D. Mich. 2001). After resolution by the MSPB, the employee has the option of either going directly to court or seeking further review by the EEOC. See 5 U.S.C. §§ 7702(a)(3), (b)(1).

would settle all of Plaintiff's claims against the agency, and 4) he was under the impression that the agency's cited proceeding between the Plaintiff and Mssrs. Ullrich and Lyons were part of the EEO process.

Pl. Rule 56.1 Response ¶ 10.

On April 4, 2001, Armstead and Washington issued a notice of final interview. The notice advised plaintiff that he had 15 days to file a formal administrative complaint of race or color discrimination. As to age discrimination, he was advised that he had 15 days to file a formal administrative complaint or that he could file a civil action within certain time limits. He was further advised that, if he chose the former, he must exhaust the administrative process before filing a civil action. He was further advised that he could only raise issues that had been raised in the informal complaint. Additionally, the notice recites that plaintiff had pursued a Step 2 grievance and that a decision had been rendered on the grievance. It is further stated that a formal complaint "should . . . state whether you have filed a grievance under the negotiated grievance procedure or an appeal to the MSPB on the same subject matter, including dates and status thereof. This information is necessary for the Agency to determine whether your complaint is appropriate for processing under 29 C.F.R. Part 1614." Plaintiff signed the notice as being received on April 12, 2001. Def. Exh. 5. Plaintiff was also sent a cover letter signed by EEO Manager Thayer stating in part: "At this time your informal EEO

complaint was not able to be resolved. You can file a formal complaint to the address indicated in the final interview notice." Def. Exh. 6.

On April 23, 2001, plaintiff filed with the EPA Office of Civil Rights a formal complaint of discrimination (dated April 16, 2001). Def. Exh. 9, ¶ 5. He lists the basis of discrimination as race (Black, Negro, African-American) and reprisal (retaliation for pursuing EEO/civil rights violations in U.S. District Court in Nov. 1999). The adverse employment action that is identified is the termination of employment. Neither the summary page nor the attachments refer to a denial of promotions, nor is there any mention of age discrimination. Def. Exh. 7.

Defendant provides affidavits of Thayer and EPA Office of Civil Rights EEO Specialist Freddie White. Both state that the EPA has a negotiated grievance procedure which permits discrimination complaints. An employee can pursue discrimination allegations through either the grievance procedure or an EEO formal complaint, but not both. An election as to which procedure to follow is made by filing either a formal grievance or a formal EEO complaint. Def. Exh. 8, ¶ 6; Def. Exh. 9, ¶ 3. Defendant does not provide a copy of the negotiated grievance procedure itself.[7] However, since no contrary evidence is provided by plaintiff, the statements in the affidavits as to the existence of the negotiated grievance procedure must be accepted

---

[7] In her brief, defendant refers to Master Collective Bargaining Agreement, Article 43.

as true. There is no indication of any further grievance procedure after Step 2,[8] other than an appeal to the MSPB or EEOC, whichever may be appropriate. See Def. Exh. 4 at 4.

According to White, clerical error resulted in a delay in the processing of plaintiff's formal EEO complaint. Def. Exh. 9, ¶ 5. There is no evidence that the formal EEO complaint was acted upon in any manner. It apparently was not found to be unprocessed until White searched for it in preparing his February 2002 affidavit. See id. There is no indication that it has thereafter been investigated or denied. According to White, if it had been processed, the formal complaint would have been denied both because (a) it was untimely to wait until February 2001 to initiate an informal EEO complaint about a May 5, 2000 discharge and (b) plaintiff had already elected to raise his discrimination claims through the grievance procedure. Under EEOC regulations, the appropriate action would have been to dismiss the complaint because the claims had already been raised in the grievance procedure. 29 C.F.R. § 1614.107(d).

On August 28, 2001, plaintiff filed the civil action that is now before the court. In his complaint, he refers to filing with the EEOC, on April 16, 2001, a charge of discrimination. This apparently is a reference to the formal complaint filed with the EPA. Plaintiff also attaches to his complaint a notice of right to sue that he states was received on August 13, 2001.

---

[8]For example, some negotiated grievance procedures provide for arbitration as a final step.

That notice, however, concerns reconsideration of earlier claims of discrimination that plaintiff now states are not being raised in the present lawsuit, and are only relied upon as evidence that discrimination occurred during the time period raised by the present claims.

As to discrimination claims of a federal employee, a regulation of the EEOC provides:

> When a person is employed by an agency subject to 5 U.S.C. 7121(d) and is covered by a collective bargaining agreement that permits allegations of discrimination to be raised in a negotiated grievance procedure, a person wishing to file a complaint or a grievance on a matter of alleged employment discrimination must elect to raise the matter under either part 1614 or the negotiated grievance procedure, but not both. An election to proceed under this part is indicated only by the filing of a written complaint; use of the pre-complaint process as described in § 1614.105 does not constitute an election for purposes of this section. An aggrieved employee who files a complaint under this part may not thereafter file a grievance on the same matter. An election to proceed under a negotiated grievance procedure is indicated by the filing of a timely written grievance. An aggrieved employee who files a grievance with an agency whose negotiated agreement permits the acceptance of grievances which allege discrimination may not thereafter file a complaint on the same matter under this part 1614 irrespective of whether the agency has informed the individual of the need to elect or of whether the grievance has raised an issue of discrimination. Any such complaint filed after a grievance has been filed on the same matter shall be dismissed without prejudice to the complainant's right to proceed through the negotiated grievance procedure including the right to appeal to the Commission from a final decision as provided in subpart D of this part. The dismissal of such a complaint shall advise the complainant of the obligation to raise discrimination in the grievance process and of

>     the right to appeal the final grievance decision
>     to the Commission.

29 C.F.R. § 1614.301(a).

In accordance with this regulation, plaintiff elected to proceed through the grievance procedure when he filed a formal grievance prior to filing any formal EEO complaint. Brucks v. O'Neill, 184 F. Supp. 2d 1103, 1115 (D. Kan. 2001); Linthecome v. O'Neill, 2001 WL 1446176 *3 (N.D. Tex. Nov. 13, 2001), aff'd by unpublished order, 45 Fed. Appx. 323, 2002 WL 1860532 (5th Cir. June 27, 2002); Hupka v. United States Department of Defense, 134 F. Supp. 2d 871, 877 (E.D. Mich. 2001).[9] Having elected to raise his race, color, age, and retaliation claims in the grievance procedure, plaintiff had to fully exhaust his grievance remedies (including appealing to the MSPB) before filing a court action.

---

[9]Plaintiff's citation to In re Department of Interior Bureau of Reclamation Yuma Projects Office & Local 1487, National Federation of Federal Employees, 85 F.S.I.P. 15, 1985 WL 32746 *5 (Federal Service Impasses Panel May 31, 1985) ("With regard to the scope of the grievance procedure issue, the record shows that the prevailing practice in the local area is that allegations of discrimination based upon race, color, sex or national origin are excluded from the grievance procedure."), is inapposite. That decision involved a negotiation impasse as to whether a collective bargaining agreement applicable to Interior Department employees should be modified so that discrimination claims could be raised through the grievance procedure. The FSIP resolved the impasse in favor of maintaining the status quo of the existing agreement because, as of 1985 in the particular locale, private sector collective bargaining agreements generally did not include such provisions. In the present case, it is undisputed that the collective bargaining agreement applicable to EPA employees in plaintiff's former position has a provision permitting discrimination claims to be raised in the grievance procedure. Therefore, the election provisions of § 1614.301(a) apply to plaintiff's situation.

Johnson v. Peterson, 996 F.2d 397, 400 (D.C. Cir. 1993); American Federation of Government Employees, Local 2052 v. Reno, 992 F.2d 331, 336 (D.C. Cir. 1993); Linthecome, 2001 WL 1446176 at *3; Hupka, 134 F. Supp. 2d at 876-77; Van Houten v. Gober, 1998 WL 966021 *4 (E.D. Pa. Nov. 10, 1998). Since plaintiff failed to appeal the Step 2 decision to the MSPB, he has waived the opportunity to raise his discrimination claims in a court action. Johnson, 996 F.2d at 400; Hupka, 134 F. Supp. 2d at 877. See also Linthecome, 2001 WL 1446176 at *4; Kenyon v. O'Neill, 2002 WL 1811909 *1 (N.D. Tex. Aug. 5, 2002).

Plaintiff contends it was his intention to pursue EEO procedures and that he believed the grievance procedure was part of the EEO procedures. As previously set forth, any attempt to place blame on the union representatives for not following plaintiff's purported intentions cannot be raised in the present proceeding. The only question would be whether equitable estoppel excuses plaintiff's failure to elect and exhaust the EEO administrative procedures. To apply equitable estoppel, the following must be shown: "First, the party to be estopped must know the facts. Second, this party must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has a right to believe it is so intended. Third, the party asserting estoppel must have been ignorant of the facts. Finally, the party asserting estoppel must reasonably rely on the other's conduct to his substantial injury." Edgewater Hospital, Inc. v. Bowen, 857 F.2d 1123, 1138 (7th Cir. 1988), as amended,

866 F.2d 228 (7th Cir. 1989). Accord Gibson v. West, 201 F.3d 990, 994 (7th Cir. 2000). When the party to be estopped is a government agency, it must also be shown that the government has engaged in affirmative misconduct. Id.; Lewis v. Washington, 300 F.3d 829, 834 (7th Cir. 2002); Edgewater Hospital, 857 F.2d at 1138. Affirmative misconduct "is more than mere negligence." Gibson, 201 F.3d at 994. Moreover, "a government's failure to discharge an 'affirmative obligation' is not the same as engaging in 'affirmative misconduct.'" Id. (quoting Edgewater Hospital, 857 F.2d at 1138 n.8).

Here, regulation 1614.301(a) specifically provides that the filing of a grievance acts as an election "irrespective of whether the agency has informed the individual of the need to elect." Therefore, the EPA was not obliged to make it clear to plaintiff that his filing of a grievance would act as an election overriding any informal EEO proceeding that had been previously initiated through the telephone conversations with Thayer and Spearman. Plaintiff provides no evidence that Thayer or Spearman affirmatively misled him regarding the possibility or effect of subsequently filing a grievance. Even if they had, plaintiff thereafter had the advice of union representatives so any reliance on any misstatements of Thayer or Spearman would likely not be reasonable. The EPA's response to plaintiff's attempt to renew or file anew an informal and formal EEO complaint did fail to clarify to him that he could not proceed on such a complaint because he had previously gone through the grievance procedure

and instead indicated he might still be able to pursue an EEO
complaint. In plaintiff's situation of having previously
instituted grievance proceedings, § 1614.301 does place an
affirmative obligation on the federal agency to dismiss the filed
complaint and advise the employee as to grievance procedures and
the right to appeal.[10] The EPA did not take such action in
response to plaintiff's formal EEO complaint, nor so advise him
during the informal complaint stage. However, omitting to
perform an affirmative obligation is not a basis for applying
estoppel as against the government. Gibson, 201 F.3d at 994.
Moreover, it cannot be contended that plaintiff reasonably relied
on the omission to his detriment. The Step 2 decision (if not
his union representatives as well) advised plaintiff of the
possibility of appealing to the MSPB. Moreover, the informal
procedures were not revived until February 13, 2001, which is
more than four months after the September 27, 2000 Step 2
decision. The formal complaint was not filed until April 23,
2001, nearly seven months after the Step 2 decision. Since the
time for appealing the Step 2 decision was 30 days after receipt
of the September 27, 2000 decision, 5 C.F.R. § 1201.154(a), any

---

[10]This provision refers to "a complaint filed after a
grievance has been filed." Since an informal EEO complaint is a
pre-filing procedure, see 29 C.F.R. § 1614.105(a), this
obligation of § 1614.301(a) does not apply to the informal
complaint counseling stage and the provisions regarding a
counselor's obligations do not contain such an obligation, see
id. § 1614.105(b). It would, however, be consistent with the
regulations to provide such advice during the informal complaint
stage.

- 16 -

conduct by the EPA in February 2001 or thereafter could not have caused plaintiff to fail to timely file an appeal to the MSPB. By February 2001, the time for filing such an appeal had already expired.

Plaintiff failed to avail himself of the opportunity to appeal the grievance decision to the MSPB. The evidence before the court does not support that equitable estoppel or any other ground excuses plaintiff's failure to pursue such an appeal. Because he did not avail himself of all possible administrative procedures, plaintiff has waived the opportunity to pursue his discrimination claims in a federal lawsuit.

In addition to complaining of the discriminatory conduct itself, plaintiff complains that the EPA has failed to timely and properly process his EEO complaint.[11] Even if this should be viewed as distinct from the claims raised in the grievance procedure,[12] the Seventh Circuit has held that no independent cause of action exists for a federal agency's failure to properly process an EEO complaint. Jordan v. Summers, 205 F.3d 337, 342 (7th Cir. 2000). This claim will be dismissed.

Plaintiff's entire cause of action is subject to dismissal and no discrimination claim has been properly preserved to be raised in a court action. Therefore, it is unnecessary to

---

[11]This may actually be claimed to be retaliation for filing the prior EEO complaints and legal actions.

[12]The EEO proceedings that occurred in 2001 were subsequent to resolution of the grievance procedures.

address the summary judgment motions that go to the merits of the claims and those motions will be denied without prejudice.

IT IS THEREFORE ORDERED that defendant's motion to dismiss [23-1] and cross motion for summary judgment [29-1] are denied without prejudice. Plaintiff's motion for summary judgment [26-1] and motion opposing agency's statement of facts [33-1] are denied without prejudice. Defendant's motion for summary judgment [23-2] is granted. The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiff dismissing plaintiff's cause of action with prejudice. If plaintiff wishes to appeal this order, he must file a Notice of Appeal to the United States Court of Appeals for the Seventh Circuit with the Clerk of the Court, United States District Court for the Northern District of Illinois, 219 South Dearborn Street, 20th Floor, Chicago, Illinois 60604, within sixty (60) days of the entry of the judgment in this case.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: OCTOBER 31, 2002